Appellant Frank Miramonti But wasn't there another incident that involved the same issue? It was not the same issue. It was a racial epithet, but it was not the same issue. That individual who's no longer in the office and has left the employment of the agency said that that was something that really didn't bother him. It's conceivable that if that specification were sustained again, that it wouldn't result in the same disciplinary action. And of course it's possible the agency may try to fire the appellant, redo everything and say that this is something that you should have been fired for. I don't think that that's the case, but clearly facts were considered that the appellant had no notice of that the deciding official said, and it's quoted in his deposition testimony, which he backed away from, that it certainly influenced my decision. And if you take that out of his decision, it's hard to say in light of what's been created as a credibility issue now, that he would decide the same way. There's another issue, of course, on appeal, which is the appropriateness of the penalty. The petitioner understands that the standard of review is such that it's an abuse of discretion, arbitrary, capricious, otherwise not in accordance with the law. There's some overlap with the due process argument again, in that he was not afforded procedures due him by law in effecting the action that has been appealed. But above and beyond that, and really it's conceded in the last three to four pages of the agency's brief, that there were a number of aggravating factors that were considered in this case that simply should not have been considered as aggravating factors. Those included plaintiff's alleged supervisory status. He was not a supervisor. He was a professional level employee in the office, not a supervisor to the woman in the incident on September 3rd. That is unsupported by substantial evidence. There is not substantial evidence to support that consideration. Additionally, the agency considered it as an aggravating factor, a serious aggravating factor, and the judge agreed with it that there was, quote, trouble with the union. It never occurred. There was no trouble with the union. This was a single incident that should have been handled as a single incident, and they should have disciplined the- But it seems to me you're asking us for a do-over on the trial. I mean, you were there at the hearing, or whoever was representing your client, and this evidence was going in, and you had a chance to cross-examine or to question it. So now you're challenging some of the evidence, and you're telling us this wasn't so, and you're asking us to re-evaluate that in an area which you acknowledge is one which we rarely, rarely ever get involved with, because there's so much deference on the Douglas factors as long as there's some consideration, right? Correct. Correct. With regard to those last two points that I just mentioned, Judge, I was at the hearing. I was the hearing attorney for the- There was no evidence about that because that's not what occurred. I don't know where in the record the judge- As you may notice, there was a footnote at the beginning of the A.J.'s initial decision. I issued this decision six months after the date of the hearing. I think he simply recalled the facts incorrectly. There was no evidence. There was no chance to oppose that evidence because it was never entered into evidence. It shouldn't have been considered in sustaining the disciplinary downgrade. Additionally, there's some other points that correspond with the fact that the agency inappropriately considered aggravating factors, which is that they failed to appropriately consider all of the relevant Douglas factors. Again, the standard of review is what it is. It's a high standard of review. However, at some point, when you have the agency considering the Douglas factors incorrectly, which the agency concedes, they use appellant's years of service against them. It gets back to something that I was going to lead into with the court, which is what's really going on here? In employment cases, it's often what's really going on here? From appellant's point of view, what's really going on here is that the deciding official believed that these offensive statements were made on September the 3rd, and he therefore had to take the petitioner's career away from him and not allow him back into that office. And that's not what occurred. It's simply not what occurred. I'm going to save my final four minutes for the panel. Thank you. Thank you, Mr. Kaminsky. Ms. Stewart? Good morning. If I could just address this so-called due process argument. It's clear that, at least as to the incident with Mr. Mead's, that Judge Prost referenced, that it was outright rejected by the administrative judge at various points during the hearing. It's all over the transcript that the administrative judge just didn't buy the argument that there was insufficient notice as to the charge that Mr. Miramonte used a racial epithet and directed it toward Mr. Mead's. Is that a question of fact, or is that a question of law? I suppose that the petitioner is treating it as a question of law. That was unaddressed. Factually, there's no dispute about it. The testimony is clear. The deciding official testified that Mr. Miramonte's defense essentially was, yes, I may have used the N-word, but I didn't mean it in a derogatory way. And the deciding official's testimony is clear. He didn't care what the intent or the state of mind behind the use of the word was. He thought it was inappropriate to be used in the workplace, and it was a sufficient basis to take some sort of disciplinary action against Mr. Miramonte, which is exactly what the deciding official did. As a legal matter, it appears that the petitioner thinks there needs to be a sentence or two to that effect in the initial decision. Otherwise, the initial decision is subject to being reversed for that reason alone. And the court's own precedent does not support that. It's in the record in the sense that repeatedly the administrative judge said, this argument does not bear the way that you're trying to make it bear. As to the other incident with Ms. McIntosh, the deciding official explained the situation with that as well. There was an e-mail written the day of this incident, the day that certainly inappropriate and profane language was directed at Ms. McIntosh in front of the other people in this small insular work unit. And as a result of that, what happens is a lot of information is flowing in really in real time to Mr. Mossman, and the e-mail reflects him trying to make sense of information flowing in all at the same time. As to the deposition testimony, he explained that too, that he misspoke and his deposition testimony has been misunderstood by a petitioner. And it's also clear from the record that at the time he made the decision to demote Mr. Miramonte, after the investigation, after everyone had their opportunity to state their side of the story, there was no belief that a racially derogatory term had been used on September 3, 2003. No doubt about that. And the petitioner now would like to make that out as a credibility issue that the AHA was also obligated to address. First, again, the court's own precedent does not put that standard to the board's orders. Second, it's conceivable, based on the transcript and the record, that the AHA did not see it as a credibility issue, that he was concerned about what did the deciding official believe at the time the decision was made, at the time the disciplinary action was taken. And if there was ever a credibility issue, it was clearly and implicitly at least resolved in favor of the Postal Service. So the bottom line on the due process is to the extent it's predicated on reliance by the deciding official of an incident that was not covered in the spec and that he didn't have an opportunity to reply to, you just said that the AHA found him. There's just no indication that that happened, right? There's no indication that that happened. And as you pointed out, Judge Prost, even if we were to accept everything that petitioner has said about this incident with Ms. McIntosh, there's still the incident with Mr. Meads, which he is no longer contesting, where a very similar charge was made, and there's evidence about that. He's conceded he used the term, and Mr. Kaminsky just suggested, we don't know how Mr. Mosman would have decided if he had had a correct understanding about the incident with Ms. McIntosh. Well, we do. He has said, with respect to the Meads incident, it's an inappropriate term to be used in the workplace. I don't care what your intent is. I don't care if you're being rhetorical. I don't care if you mean it in a mean or derogatory way. It's not a word that should be spoken in the workplace. So we know what Mr. Mosman's views are about that issue. I don't know if the Court has any questions as to the Douglas factors presented. You're familiar with those? You're familiar with Douglas. I'd imagine so, Your Honors. I mean, I'll just say on the Douglas factors, certainly it's within our discretion, and we take the position that discretion was exercised in a very reasonable manner in this case, that we have a person who has a track record of repeated conduct that's disruptive and disrespectful. He works in a small unit that's, in a way, very self-contained in what it does and interacts less frequently with other people in the plant. And he's demonstrated this pattern of blowing up at people, going off, coming back the next day or having a cigarette and apologizing. And it seems that it just reached a point where his coworkers couldn't take it anymore. And as to this argument that mitigating factors weren't sufficiently considered, as we detailed in the brief, they were. The physical and mental health issues were considered. The length of his tenure and the lack of active discipline in his record was considered. The fact that Mr. Meade's own statements in the middle of that incident were provocative was considered. We've read most of this in the brief, I think. Okay. Well, I just wanted to know if you have no questions at all. I didn't think we asked any. Thank you, Ms. Stewart. Mr. Comiskey? Thank you, Your Honor. I would just like to briefly again cover the issue with regard to what did occur on September 3rd and how we know what the deciding official considered. He wrote it in his e-mail. The petitioner was using profanity and racial epithets. When asked at his deposition, he said that the racial epithet was the N word. On September 3rd, I clarified that. He said, yes, I believe so. Then when he was provided the opportunity to correct that testimony through his deposition correction sheet, he didn't attempt to correct what the agency now claims is something where he misspoke. However, when he was confronted with that statement at the hearing, at the trial, and after the trial was over, he did attempt to correct that testimony by providing the petitioner and myself a corrected deposition correction sheet, a second deposition correction sheet, where he does change that testimony after the trial was over. No opportunity to ask him about it. No opportunity to cross-examine him about it. That's where the credibility determination comes into play because it's central to the due process argument of the appellant that if you believe this and you believe that the petitioner burned his bridges, it seems that both of those things go hand-in-hand in some sort of a determination. An acknowledgement of that issue has to be made so that an intelligent, informed appeal of the issue could be made if necessarily the judge disregarded it. To a certain extent, the agency and the petitioner are passing one another in the night like two ships. We're not arguing that the Lewis Meads incident regarding the epithet was a due process violation. That's a fact issue. The judge believed that it happened. The judge also believed that Mr. Meads really thought nothing of it. He said that's just the petitioner, that's just Frank. That's not what we're appealing. We're appealing what the deciding official believed on September 3rd when several African-American employees reported to his office and said, we can't work with Frank anymore, and reportedly told him that racial epithets were being used when that just was not the case. Simply not the case. No evidence of that. Again, with regard to the Douglas factors, and I know that the court is familiar with those and I don't want to belabor the point, but what really happened here is that one Douglas factor, the relationship with the coworkers, it's important. Admittedly, but that was the single factor that was really given overriding consideration as spelled out in the briefs, that that was the factor that the deciding official put all his weight upon and the board has said, that's not what you're supposed to do. You're supposed to look through the prism of all the other Douglas factors and say, well look, this guy has almost 20 years of federal service. He has a discipline-free record. All of these things go into consideration before you propose or decide to take someone's career away from them. I appreciate your patience today. Thank you, Mr. Kaminsky. Final case this morning is Globe Savings versus the United States.